## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEKESHIA ANDERSON<br>4322 N. Carlisle Street<br>Philadelphia, PA 19140 : | : |
| : | CIVIL ACTION |
| Plaintiff, : | DOCKET NO |
| v. : | |
| : | |
| KENCREST SERVICES : | |
| 502 West Germantown Pike, Suite 200 : | **JURY TRIAL DEMANDED** |
| Plymouth Meeting, PA 19462 : | |
| : | |
| Defendant. : | |

### CIVIL ACTION COMPLAINT

Dekeshia Anderson (hereinafter referred to as "Plaintiff," unless indicated otherwise), by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.    This action has been initiated by Plaintiff against Kencrest Services (hereinafter referred to as "Defendant" unless indicated otherwise) for violations of the Americans with Disabilities Act, 42 U.S.C. §§12101 *et. seq.* ("ADA"), the Family and Medical Leave Act ("FMLA - 29 U.S.C. §2601 *et. seq.*), the Pennsylvania Human Relations Act, and Pennsylvania Common Law. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### JURISDICTION AND VENUE

2.    This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights under the ADA and the FMLA.  This Court may also

assert supplemental jurisdiction over Plaintiff's state law claims as they arise out of the same facts as her federal law claims.

3.      This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5.      Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing and dual-filing her Charge with the EEOC and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual, with an address as set forth in the caption

8.      Defendant Kencrest Services (hereinafter "Defendant") is a non-profit entity with over 300 locations nationwide, and the entity operates schools, job coaching programs, and many other services.

9.      At all times relevant herein, Defendant acted by and through its agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.     Plaintiff was hired by Defendant in or about 2007, and she worked for Defendant for most of her employment at 5500 Henry Avenue, Philadelphia, PA 19128 (until 2012, discussed *infra*).

12.     Plaintiff was promoted in or about July of 2010 to the position of Community Home Supervisor at the 5500 Henry Avenue location (until 2012, discussed *infra*), based upon her demonstrated performance and good work.

13.     In or about December of 2010, Plaintiff sustained work-related injuries wherein a client of Defendant attacked Plaintiff.

14.     Prior to December of 2010, Plaintiff had performed her job well, received praise, and did not have disciplinary concerns.

15.     Due to the aforesaid work injury in 2010, Plaintiff had and continues to have ongoing problems and has required treatment for back, neck and shoulder problems.

16.     Such conditions have and continue to limit Plaintiff's ability at varying times to lift, walk, and to perform manual tasks (among other life activities).

17.     Plaintiff had medical limitations following the December 2010 injuries, which had to be accommodated until she was able to resume working for Defendant without restrictions in or about January of 2011.

3

18.    In or about July of 2011, Plaintiff required a medical leave of absence due to her declining health and aforesaid medical conditions.

19.    From in or about late July through in or about late September 2011, Plaintiff was on a medical leave of absence.

20.    Plaintiff was supervised by one Vicky Anderson for the most part prior to her July 2011 medical leave; however, Plaintiff's was supervised by one Valerie Vankirk throughout the second half of 2011 and thereafter.

21.    Vankirk was employed as Plaintiff's supervisor and held the title of Assistant Project Director.

22.    While discussing her health problems and potential leave needs, Plaintiff was experiencing very significant animosity from her management about her health problems, and had received pretextual discipline in mid-2011, the first discipline she given to her in roughly 4 years of working for Defendant.

23.    Vankirk exhibited a very clear discriminatory animus about Plaintiff's medical conditions and would often make discriminatory comments such as telling Plaintiff she was never really hurt, nothing happened to you, nothing is wrong with you, and other similar statements inferring Plaintiff was exaggerating or lying about her health problems.

24.    Plaintiff made a formal written complaint of discrimination to Defendant's human resources department on July 27, 2011 referencing she has been discriminated against due to her worker's compensation matter and health conditions (among other concerns).

25.    On or about September 23, 2011, prior to Plaintiff even returning from her medical leave in late September of 2011, she was sent correspondence outlining potential ways in which she will be given constructive feedback and monitored going forward.

26.     During the second half of 2011 and early 2012, Vankirk was also continually raising false or feigned concerns about Plaintiff's conduct in the workplace through questions that implied she was looking for any reason to discipline Plaintiff.

27.     Following verbal discipline from July of 2011, Plaintiff was next given written discipline in April of 2012.

28.     Due to the ongoing mistreatment Plaintiff was experiencing since her work injury and medical leave needs, she memorialized a complaint to Defendant's human resources management on April 29, 2012, stating in pertinent part:

> On July 27, 2011 I file a claim of discrimination and harassment. As of this date I am still being harass and discriminated against which is giving me an uncomfortable feeling at work . . . On April 4, 2012 Valerie Vankirk I informed her that I would like to transfer. On April 11, 2012 at around 9pm she gave me with a written warning for incident that may have happen about a month ago . . . Before I asked for the transfer I had nothing in my file that would stop me from transferring . . . The harassment and discrimination has not been resolved. With all of the harassment that I am still going through I am requesting for an immediate transfer to the position I apply for on February 20, 2012.

29.     Due to Plaintiff's complaint of discrimination on April 29, 2012, Plaintiff was instructed to stay out of work by one Denise Lamlin (Director of Defendant's Employee Relations).

30.     On or about May 2, 2012, Lamlin confirmed that she was instructing Plaintiff not to return to work while she working on a "response to [her] letter," which was Plaintiff's complaint of discrimination.  *See* 5/2/12 e-mail chain, attached hereto as "Exhibit A."

31.     Plaintiff was not permitted to return to work once placed on an involuntary leave because of her very complaint of discrimination on April 29, 2012; and instead, she was told via letter by Lamlin that she would have to reapply for employment for another job.

32.     Plaintiff was literally being required to apply and interview for available jobs throughout May 2012 as if she was never employed with Defendant.

33.     On May 23, 2012, Plaintiff e-mailed Lamlin explaining in pertinent part:

> . . . When we talked and I complained about discrimination originally, I only told you that I felt the work environment was really hostile and uncomfortable. I went back and re-read your May 7 letter to me because of how long this job transfer/application process is taking, and I disagree that I ever told you returning was not an option. I actually told you I was ready to report to work for my next shift when you put me on admin leave based on your concerns.
>
> Based on what you told me, I thought you were going to basically transfer me into another job opportunity because of my concerns of discrimination and mistreatment. Instead, it seems like you just terminated me and are treating me like an outsider making me apply for jobs as if I never worked for the company previously. I am feeling a little misled. Since I am now not being guaranteed any type of transfer and am being treated like a possible new hire, I would like to be put back in my prior job since I never refused to continue in that job.
>
> Even if I have to continue to endure mistreatment, I need an income. I cannot wait any longer to be possibly rehired in another job.
>
> *See* Exhibit B.

34.     Following Plaintiff's request to be reinstated to her prior job, she was suddenly told by Lamlin that she was not being placed back in the job for 2 reasons: (1) for supposed performance concerns; and (2) because Plaintiff previously said returning was not an option. *See* June 1, 2012 Correspondence, attached hereto as "Exhibit C."

35.     Later in June of 2012, Plaintiff was unequivocally told by Lamlin that she could under no circumstances be given back he prior job and that if she wanted to remain working for Defendant, she had to take a non-supervisory job.

36.     Plaintiff was demoted to an inferior job (that was non-supervisory), given a reduced hourly rate at $6.00 less per hour than she previously earned, and she was required to drive a much more substantial distance to work.

37.     Plaintiff suffered immense emotional distress through the mistreatment and demotion process.

38.     Plaintiff was treated in a very hostile manner, placed on an involuntary leave due to her complaints of discrimination, and demoted in retaliation for her complaints of discrimination.

**First Cause of Action**
**Violations of the Americans with Disabilities Act ("ADA")**
**([1] Actual / Perceived Discrimination; [2] Retaliation)**

39.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

40.     Plaintiff asserts herein that, due to her health problems (known and/or perceived), requested accommodation (time off from work), and complaints of discrimination, she was: (1) subjected to a hostile work environment; (2) placed on an leave impermissibly in May of 2012; (3) terminated from her supervisor job; (4) and demoted.

41.     These actions as aforesaid constitute violations of the ADA.

**Second Cause of Action**
**Violations of the Pennsylvania Human Relations Act ("PHRA")**
**([1] Actual / Perceived Discrimination; [2] Retaliation)**

42.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

43.     Plaintiff properly exhausted her administrative remedies to proceed under the Pennsylvania Human Relations Act ("PHRA") by timely dual-filing her EEOC Charge with the

Pennsylvania Human Relations Commission and by waiting sufficient time to initiate the instant lawsuit.

44.     Plaintiff re-asserts and re-alleges each and every allegation as set forth in her First Cause of Action as such acts against her constitute identical violations under the PHRA (as the PHRA and ADA are analyzed identically and have the same protections).

**Third Cause of Action**
**Violations of the Family and Medical Leave Act ("FMLA")**
**(Interference & Retaliation)**
**- Against Defendant Entity and Defendant Reese -**

45.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46.     Plaintiff required intermittent and block leave for her serious health conditions of back, neck and shoulder problems in late 2011 and through 2012.

47.     Plaintiff's leave intermittently and on a block basis was all FMLA qualifying, as Plaintiff met all eligibility requirements of the FMLA to be entitled to such coverage.

48.     Defendant committed interference and retaliation violations of the FMLA by: (1) mistreating Plaintiff to dissuade her use of leave; (2) terminating Plaintiff to prevent her from exercising her rights under the FMLA; (3) terminating Plaintiff because she exercised her rights under the FMLA (by making the requests for such leave and by taking such leave); (4) by counting FMLA-qualifying time against Plaintiff for purpose of discipline and other adverse acts against her.

**Fourth Cause of Action**
**Violations of the New Jersey Law against Discrimination ("NJ LAD")**
**(Termination in Violation of Public Policy)**

49.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

8

50.    Plaintiff was terminated in substantial part for filing a worker's compensation claim, sustaining a work injury, and/or pursuing worker's compensation benefits against Defendant.

51.    These actions as aforesaid constitute wrongful termination in Pennsylvania. *See Shick v. Shirey,* 552 Pa. 590, 716 A.2d 1231 (1997).

**WHEREFORE,** Plaintiff prays that this Court enter an Order providing that:

A.    Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

B.    Plaintiff is to be awarded actual damages, as well as damages for the pain and suffering, and humiliation caused by Defendant's actions (as permitted by applicable law);

C.    Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct;

D.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

E.    Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F.    Plaintiff shall be permitted to have a trial by jury as requested in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTI, P.C.**

By:  _____
Ari R. Karpf
3331 Street Road
Two Greenwood Square
Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: June 26, 2013

# Exhibit A

-----Original Message-----
From: Denise Lamlin <Dlamlin@KenCrest.org>
To: 'ameengirl@aol.com' <ameengirl@aol.com>
Cc: Deborah Rowell <drowell@KenCrest.org>
Sent: Wed, May 2, 2012 4:19 pm
Subject: RE: Dekeshia Anderson

Hello DeKeshia,

Yes, thank you for contacting me.  When we spoke today at Noon, I felt it best that you not return to work until I determine a resolution.  I then called Deby Rowell and your supervisor, Valerie VanKirk, to alert them that you would not be reporting to work today due to my instruction.

Deby simply needs you to bring the items that she spoke to you about so that she can ensure the house will run smoothly and individuals' needs are met while you are away during this time while we reach a solution.

DeKeshia, I'm sorry that the phone call from Deby was alarming to you, but I assure you that I am still working through a response to your letter.

Thank you for understanding,

Denise Lamlin

-----Original Message-----
From: ameengirl@aol.com [mailto:ameengirl@aol.com]
Sent: Wednesday, May 02, 2012 2:14 PM
To: Denise Lamlin
Subject: Dekeshia Anderson

Hi Denise
After we talked today and you told me not to come to work today, Debb called me and asked for all of the things I have that is Kencrest.  I did tell you that im uncomfortable working at Henry ave but im am not quitting. Im just not sure what is going on at this time. Can you clear this up for me.

Thank you
Dekeshia Anderson

# Exhibit B

-----Original Message-----
From: Denise Lamlin <Dlamlin@KenCrest.org>
To: 'ameengirl@aol.com' <ameengirl@aol.com>
Cc: Deborah Rowell <drowell@KenCrest.org>
Sent: Thu, May 24, 2012 9:16 am
Subject: RE: Dekeshia Anderson

Dear DeKeshia,

I am acknowledging receipt of your email dated 5/23/12 at 5:22pm.  I will review it and respond to you as soon as possible.


Sincerely,
Denise Lamlin
Director of Employee Relations


-----Original Message-----
From: ameengirl@aol.com [mailto:ameengirl@aol.com]
Sent: Wednesday, May 23, 2012 5:22 PM
To: Denise Lamlin
Cc: Deborah Rowell
Subject: RE: Dekeshia Anderson

Ms. Lamlin,

    I am writing to follow up on your original May 7, 2012 letter to me and our e-mails since then.  When we talked and I complained about discrimination originally, I only told you that I felt the work environment was really hostile and uncomfortable. I went back and re-read your May 7 letter to me because of how long this job transfer/application process has been taking, and I disagree that I ever told you returning was not an option.  I actually told you I was ready to report to work for my next shift when you put me on admin leave based on your concerns.

    Based on what you told me, I thought you were going to basically transfer me into another job opportunity because of my concerns of discrimination and mistreatment.  Instead, it seems like you just terminated me and are treating me like an outsider making me apply for jobs as if I never worked for the company previously.  I am feeling a little misled. Since I am now not being guaranteed any type of transfer and am being treated like a possible new hire, I would like to be put back in my prior job since I never refused to continue in that job.
Even if I have to continue to endure mistreatment, I need an income.  I cannot wait any longer to be transferred or to be possibly rehired in another job.

    Can you please get back to me asap about this?

as always thank you
Dekeshia Anderson

# Exhibit C

 **KenCrest Services**
Human Resources

502 West Germantown Pike, Suite 605
Plymouth Meeting, PA 19462
610-825-9360 *fax* 610-825-8514
www.kencrest.org

June 1, 2012          Sent by Email to ameengirl@aol.com and Regular Mail

Dekeshia Anderson
4322 N. Carlisle Street
Philadelphia, PA 19140

Dear Dekeshia,

This letter is in response to your email addressed to me and dated 5/31/12 at 7pm.

I will again clarify for you the status of your employment at KenCrest, which I have done previously in my letters and in our May 7th meeting. You have not been terminated – however, your demonstrated lack of supervisory skills has resulted in a decision that you cannot continue as a Community Home Supervisor. We have offered to attempt to find you a position as a Resident Advisor. My letter of May 7th and our discussion covered the details.

At the present time, your employment remains active, however, you do not have a job assignment yet. Our efforts to find a suitable, available Resident Advisor job for you have taken longer than expected due in large part to your expressed desire not to work in the Philadelphia Residential program but rather to be assigned to an RA job in Eastern Residential. Also, you need an accommodation not to work any Fridays, plus you have recently said that you can only work one weekday and Saturday, Sunday.

When we transfer staff, it is important that we find the right fit between staff and individuals who live in the residential homes. I cannot just transfer you, and did not indicate that I would be doing that. I initially asked you to let me know if you wish to pursue RA openings, and you replied by asking me to let you know what openings were available. That is what we have been doing, in addition to taking your work schedule availability into account.

The pay rate that you will receive is due to the RA position, which as you know is paid lower than a supervisor position. You asked me if you would receive the $11.00/hour that you were previously paid as an RA, and the directors of both Philadelphia and Eastern Residential programs said they would approve that rate for you.

Although you may be perfectly willing to go back to your old job now, you have told me previously that returning to Henry Avenue where you worked is not an option and you don't want to work in Philadelphia Residential. The supervisor job is not available to you for the reasons I have already discussed with you, therefore, it is not clear to me why you continue to make reference to going back to the former job.

Page 1 of 2

*Opportunity Brings Ability to Life* 
Years of Service

Dekeshia Anderson
June 1, 2012

At this point, the RA position at Erie Avenue in Telford is available and will be given to you if you wish to accept it.   This residential house is located in the same cluster as the one at Mt. Kirk where you interviewed last week; and so, the project director has indicated that she would hire you.   You would need to call the supervisor at Erie by today, please.   Her name is Bee Wesolowski, and her cell # is 267-614-5864.   I have already let her know that you may be calling her and she is prepared to talk with you.

I will email this letter to you today, 6/1/12 by 1:30pm, and I will also give you a call on your cell to convey the information about the RA job at Erie Avenue being immediately available to you.   It is a place to start, and then, if you choose to, you could continue to review future RA openings that may better suit your desired location and hours.

Sincerely,

Denise M. Lamlin
Director of Employee Relations

Cc:  Personnel File

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

DeKeshia Anderson

v.

Kencrest Services

CIVIL ACTION

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.            (X )

| 10/26/13 | Ari R. Karpf | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: 4322 N. Carlisle Street, Philadelphia PA 19140

Address of Defendant: 502 W. Germantown Pike, Ste 200, Plymouth Meeting PA 19462

Place of Accident, Incident or Transaction: Defendants place of business

(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))          Yes□  No□

Does this case involve multidistrict litigation possibilities?          Yes□  No☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes□  No□

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes□  No□

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes□  No□

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes□  No□

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. □ Indemnity Contract, Marine Contract, and All Other Contracts
2. □ FELA
3. □ Jones Act-Personal Injury
4. □ Antitrust
5. □ Patent
6. □ Labor-Management Relations
7. ☒ Civil Rights
8. □ Habeas Corpus
9. □ Securities Act(s) Cases
10. □ Social Security Review Cases
11. □ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. □ Insurance Contract and Other Contracts
2. □ Airplane Personal Injury
3. □ Assault, Defamation
4. □ Marine Personal Injury
5. □ Motor Vehicle Personal Injury
6. □ Other Personal Injury (Please specify)
7. □ Products Liability
8. □ Products Liability — Asbestos
9. □ All other Diversity Cases
    (Please specify) _____

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Ari R. Karpf _____, counsel of record do hereby certify:

□ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

□ Relief other than monetary damages is sought.

DATE: 6/26/13 _____ ARK2484

Attorney-at-Law          Attorney I.D.# 91538

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 6/26/13 _____ ARK2484

Attorney-at-Law          Attorney I.D.# 91538

CIV. 609 (5/2012)

**JS 44** (Rev. 12/07, NJ 5/08)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS

ANDERSON, DEKESHIA

(b) County of Residence of First Listed Plaintiff **Philadelphia**

(c) Attorney's (Firm Name, Address, Telephone Number and Email Address)

Karpf, Karpf & Cerutti, P.C., 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020, (215) 639-0801, akarpf@karpf-law.com

### DEFENDANTS

KENCREST SERVICES

County of Residence of First Listed Defendant **Montgomery**

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☒ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
  Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

### V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Americans w/Disabilities Act "ADA" 42USC12101; "FMLA" 29USC2601

Brief description of cause:
Violations of the ADA, FMLA, Pennsylvania Human Relations Act & Pennsylvania common law

### VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

### VIII. RELATED CASE(S)

(See instructions):

JUDGE _____  DOCKET NUMBER _____

Explanation:

DATE 6/20/13

SIGNATURE OF ATTORNEY OF RECORD

---

| Print | Save As... | Export as PDF | Retrieve PDF File | Reset |
|---|---|---|---|---|