## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEKESHIA ANDERSON | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | DOCKET NO.: 13-3716 |
| | : | |
| KENCREST SERVICES | : | |
| Defendant. | : | |
| | : | |

### MEMORANDUM OF LAW IN SUPPORT OF KENCREST SERVICES'
### MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56

**I.     INTRODUCTORY STATEMENT**

Pursuant to Fed. R. Civ. P. 56, Defendant KenCrest Services ("KenCrest") hereby submits this instant motion for summary judgment as to the claims that Plaintiff, Dekeshia Anderson ("Plaintiff" or "Anderson"), has made against it in her Amended Complaint.[1]

**II.     PROCEDURAL HISTORY**

Plaintiff filed her original complaint on June 26, 2013 and an amended four-count Complaint on August 15, 2013. She has asserted claims for Violations of the Americans with Disabilities Act ("ADA"), Violations of the Pennsylvania Human Relations Act ("PHRA"), Violations of the Family and Medical Leave Act ("FMLA"), and "Common Law Wrongful Discharge."

An Answer to the Amended Complaint was filed by Defendant KenCrest on August 26, 2013. The court ordered that the matter be transferred to Federal Arbitration on September 20, 2013. Arbitration has been scheduled for January 29, 2014.

---

[1] A true and correct copy of Plaintiff's Second Amended Complaint is annexed hereto as Exhibit 1.

III.   **UNDISPUTED MATERIAL FACTS**

Plaintiff began her employment with KenCrest in December 2007 as a residential aide at their Henry Avenue, Philadelphia facility. (See Exhibit 1, paragraph 11).   During her time as a resident aid/advisor, she received written discipline for using unprofessional language with her staff. (See May 4, 2010 supervisory contact sheet, attached as Exhibit 2). Add a footnote here identifying where this and other forms you are using comes from, title it as e.g., Defendant's Response to Request for Production of Documents  and that this was produced in discovery to plaintiff. In July 2010 she was promoted to acting community home supervisor at that same location.  (See Plaintiff's December 3, 2013 deposition transcript, 9:11-21, attached as Exhibit 3). She had interviewed for the community home supervisor job in April 2010, but she was not the first choice from the existing staff for that promotion. (See Exhibit 3, 19:2-23). On September 12, 2010, Vicky Anderson[2], Plaintiff's then supervisor conducted a site review and pointed out several site issues including lack of proper documentation. (See September 12, 2010 supervisory contact sheet, attached as Exhibit 24). In December 2010, Plaintiff suffered a work related injury. (See Exhibit 3, 20:6-22).   As a result, she was out of work, on worker's compensation leave, from December 23, 2010 until January 18, 2011 returning without any restrictions. (See Exhibit 3, 24:17-23 and 87:16-20 and January 14, 2011 medical discharge, attached as Exhibit 4). She returned to her same position after her medical leave. (See Exhibit 3, 25:11-15). Her probationary status[3] was extended until March 13, 2011 since she was out of work for some time due to her medical leave. (See January 24, 2011 notice, attached as Exhibit 5).

---

[2] Plaintiff is not making a claim that Ms. Anderson discriminated against her. (See Exhibit 3, 103:13-23).
[3] KenCrest's policy is to put employees on a probationary status for 90 days after they have been promoted. The probationary period may be extended if there is an absence during the probationary period. See KenCrest's Employee Handbook, section on Probationary Period, DEF1192-93, attached as Exhibit 29.

Upon her return to work after her medical leave, Plaintiff received an evaluation from Ms. Anderson, on February 2, 2011. (See February 2, 2011 evaluation, attached as Exhibit 6). That evaluation indicated that Plaintiff needed to "stay on top of doctor appointments and filings, needs to develop a system to teach staff to help her with paperwork." (See Exhibit 6). Overall, her evaluation indicated that she "meets most expectations." (See Exhibit 6). Subsequently, in February 2011, Valerie VanKirk became Plaintiff's supervisor. On February 28, 2011, Ms. VanKirk met with Plaintiff and issued Plaintiff a second[4] supervisory contact sheet regarding complaints made by staff that Plaintiff was speaking to them inappropriately. (See February 28, 2011 Supervisory contact sheet, attached as Exhibit 7).

On April 7, 2011, Plaintiff received another evaluation, this time from Ms. VanKirk. (See April 7, 2011 evaluation, attached as Exhibit 8). Once again, she was evaluated to have met "most expectations.[5]" (See Exhibit 8). Ms. VanKirk noted that Plaintiff was having issues with her staff and that a meeting was held in February 2011 to address those issues. (See Exhibit 8). She also noted that Plaintiff was still having problems with her filing. (See Exhibit 8). In some respects, however, Ms. VanKirk's evaluation of Plaintiff was more favorable than Ms. Anderson's. () (See Exhibit 3, 116:6-21).

Subsequently, Ms. VanKirk continued to counsel Plaintiff regarding her job performance. On May 23, 2011, she spoke to her about her expectations for Plaintiff's job performance, noticing issues concerning failure to document properly and issues with resident care. (See May 23, 2011 letter, attached as Exhibit 9). Plaintiff admitted that every activity that was addressed in this May 23rd letter was one that she as a community home supervisor, should be performing.

---

[4] The first supervisory contact sheet for using inappropriate language with staff was issued in May 2010 before Ms. VanKirk was her supervisor.
[5] Plaintiff contends that even though Ms. VanKirk gave her a more favorable evaluation in some areas than Ms. Anderson, Ms. VanKirk was discriminating against her. (See Exhibit 3, 116:6-21).

(See Exhibit 3, 123:9-14). Less than a month later, on June 20, 2011, Ms. VanKirk again notified Plaintiff, in writing, of several ongoing concerns regarding her job performance. Those concerns included: not properly organizing the Program book, not responding to supervisors' emails in a timely manner, missing residents' medical appointments, failing to obtain requested items for residents, not ensuring staff is attending mandatory training, not properly training staff to enable them to make repairs at the home and speaking inappropriately to staff and residents. (See June 20, 2011 letter, attached as Exhibit 10). Plaintiff admitted that she was responsible for making sure that resident's medical appointments were kept and that she was responsible for the upkeep of the group home. (See Exhibit 3, 131:3-19). Plaintiff also admitted that it was not harassment for her supervisor to point out to her the job duties that were within her realm of responsibility even though she believed that the June 20th letter was a form of harassment and discrimination. (See Exhibit 3, 126:217-22 and 132:20-24). Plaintiff could also not dispute that staff were making complaints about her to Ms. VanKirk. (See Exhibit 3, 139:19-25 through 140:2).

On July 20, 2011, Ms. VanKirk and her supervisor, Debbie Rowell met with Plaintiff and her staff to address ongoing concerns. (See July 21, 2011 email, attached as Exhibit 11). Ms. VanKirk then met with Plaintiff separately regarding her expectations for Plaintiff's job performance and lack of leadership skills. (See Exhibit 11). Days later, Plaintiff went out on FMLA leave starting July 25, 2011. (See August 8, 2011 letter attached as Exhibit 12). Subsequent to going out on leave, Plaintiff sent a letter to KenCrest's HR Department filing a claim of discrimination and harassment. (See July 27, 2011 letter, attached as Exhibit 13). She never complained to Ms. VanKirk, however, that she felt that she was being harassed due to her medical condition, taking medical leave or being on worker's compensation leave. (See Exhibit 3, 150:17-25 through 151:1-9). KenCrest's Director of Employee Relations, investigated her

claims, met with Plaintiff and informed her that the issues she complained about did not amount to discrimination and/or harassment. (See September 23, 2011 letter, attached as Exhibit 14).

Plaintiff returned from her FMLA leave in late September 2011 to her position as Community Home Supervisor. (See Exhibit 3, 48:18-25). On September 23, 2011, before returning to work, a meeting was held with Plaintiff, her supervisors and HR staff to explain KenCrest's expectations to Plaintiff and to inform her that she would receive continued mentoring and constructive feedback regarding her job performance. (See September 23, 2011 letter, attached as Exhibit 15). Ms. VanKirk[6] wrote another memo to Plaintiff on October 31, 2011 complementing Plaintiff on her improvement but noting some areas of improvement were necessary dealing with resident care. (See October 31, 2011 memo, attached as Exhibit 16). But by the Spring of 2012, additional complaints were being made about Plaintiff. Specifically, in March 2012, Plaintiff's staff complained that she was making inappropriate comments about staff to other staff members and that Plaintiff was not performing her job duties. (See undated memo, attached as Exhibit 17). Ms. VanKirk investigated those complaints and found that many of them were accurate based on her review of the group home. (See Exhibit 17). Specifically, Ms. VanKirk noted that Plaintiff had: failed to fully participate in all required job activities, was not properly filing paperwork, was not properly training staff, was not following up on resident care and was not keeping herself apprised of resident care in a timely manner. (See Exhibit 17). Plaintiff was unable to offer any factual evidence to dispute the assertions made by Ms. VanKirk in that memo. (See Exhibit 3, 175-181). Plaintiff also admitted that she was aware that one of her staff asked to transfer because she did not want to work with Plaintiff. (See Exhibit 3, 184:6-14). As a result of this investigation, on April 11, 2012, Plaintiff received a written warning from Ms.

---

[6] Plaintiff does not consider this letter as a form of harassment or discrimination but instead admitted that it was appropriate for her supervisor to tell her things that needed to be corrected. (See Exhibit 3, 166:3-15).

VanKirk regarding her job performance. (See April 11, 2012 disciplinary action, attached as Exhibit 18). Once again, Plaintiff cannot offer any factual evidence to dispute the reasons for being given the disciplinary action form. (See Exhibit 3,185-189).

She made no further complaints to HR regarding her employment from September 2011 until April 2012. (See Exhibit 3, 49:5-15). Soon after receiving the April 11, 2012 disciplinary action, Plaintiff made a second complaint, April 20, 2012, to the HR Department regarding discriminatory and harassing behavior by her supervisor. (See April 20, 2012 letter, attached as Exhibit 19). Plaintiff has admitted that this April 20th letter was inaccurate since she had received other complaints from Ms. VanKirk regarding her job performance, contrary to what she wrote in the April 20th letter. (See Exhibit 3, 195:17-25). In the meantime, Plaintiff also filed a grievance as to the April 2012 written warning. That written warning was upheld by Maggie Bolin, the Director of KenCrest's Philadelphia Regional Services (and Ms. VanKirk's supervisor) based upon the documentary evidence supporting the write up. (See April 30, 2012 letter, attached as Exhibit 20).

Ms. Lamlin met with Plaintiff regarding her complaint and her ongoing performance issues in late April and early May 2012. (See May 7, 2012 letter, attached as Exhibit 21). During those conversations, Ms. Lamlin informed Plaintiff that her complaints could not be substantiated, that she would not be returning to work as a community home supervisor due to her poor job performance and that she would help her find another residential advisor position. (See Exhibit 21). Plaintiff informed Ms. Lamlin during that conversation that she was uncomfortable working at the Henry Avenue location. (See May 2, 2012 email exchange, attached as Exhibit 22). As a result, Plaintiff was placed on paid administrative leave during the time it took to find her another position. (See Exhibit 3, 53:11-13). Contrary to an email that

Plaintiff sent to Ms. Lamlin, Plaintiff now admits that at no time was Plaintiff ever told by KenCrest that she was terminated. (See Exhibit 3, 54, 17-25). During the resident advisor job search, she informed KenCrest that she could only work 32 hours instead of 40 hours. (See Exhibit 3:59:8-25 and 60:2-6). Ms. Lamlin again wrote to Plaintiff on May 24, 2012, outlining her actions in helping Plaintiff find a residential advisor position, noting that Plaintiff never informed her of her limited schedule and explaining that Plaintiff informed her that she only wanted to pursue openings in KenCrest's Eastern Residential program. (See May 24, 2012 letter, attached as Exhibit 23). During the search for a residential advisor position, Plaintiff interviewed at two different locations. (See Exhibit 3, 97:3-16). She ultimately took a position in the Erie Avenue house and was a residential advisor until March 2013 when she voluntarily quit her position. (See Exhibit 3, 95:7-23 and 97:22-24). As a resident advisor at Erie Avenue, she was paid more than what other resident advisors were making. (See Exhibit 3, 212:11-19). During her time as a resident advisor at Erie Avenue, she received further counsel regarding her job performance. On November 19, 2012, she received a supervisory contact sheet for a medication error. (See November 19, 2012 contact sheet, attached as Exhibit 25). Subsequently, on December 12, 2012, she received a verbal warning for another medication documentation error. (See December 22, 2012 disciplinary action sheet, attached as Exhibit 26). Even though this discipline was given to her by another supervisor and not Ms. VanKirk, Plaintiff felt that this discipline was also discriminatory in nature. (See Exhibit 3, 213-217). Plaintiff, however, has no evidence to support this. (See Id.). Plaintiff was out on worker's compensation leave again from January 20, 2013 through March 3, 2013 (See March 4, 2013 letter to Plaintiff, attached as Exhibit 27). Plaintiff voluntarily resigned her position on March 11, 2013 indicating that it was a financial hardship to travel to her workplace. (See resignation letter, attached as Exhibit 28).

Plaintiff has admitted that she was never denied medical leave during her employment with KenCrest. (See Exhibit 3, 231:4-8). Plaintiff has admitted that she had no information as to whether or not Ms. VanKirk supervised all of her community home supervisors in the same manner she supervised Plaintiff. (See Exhibit 3, 191:9-13).  Plaintiff began full time employment with another organization in February 2013, shortly before she voluntarily resigned her position with KenCrest (See Exhibit 3, 90:10-23).

## III.   LEGAL ARGUMENT

### A.   THE STANDARD FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56.

Rule 56(a) of the Federal Rules of Civil Procedure permits a party to seek summary judgment with respect to a claim or defense, or part of a claim or defense. Rule 56(a) provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *National Association for the Advancement of Colored People "NAACP" v. North Hudson Regional Fire & Rescue,* 665 F.3d 464, 475 (3d Cir. 2012). For a fact to be considered material, it "must have the potential to alter the outcome of the case." *Id.* (citing *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006)). Disputes concerning facts which are irrelevant or unnecessary do not preclude the district court from granting summary judgment. *Id.*

Where a party asserts that a particular fact is, or cannot be, genuinely disputed, the party must provide support for its assertion. Fed.R.Civ.P. 56(c)(1). The Rule provides that party may support its factual assertions by

> (A) citing particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. No. 56(c)(1).

When considering a motion for summary judgment, the district court must view the facts and record evidence presented "in the light most favorable to the non[-]moving party." *North Hudson*, 665 F.3d at 475 (quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)). If the moving party shows that there is no genuine issue of fact for trial, "the non-moving party then bears the burden of identifying evidence that creates a genuine dispute regarding material facts." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party has met its initial burden, the nonmoving party must present "specific facts showing that there is a genuine issue for trial," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (U.S. 1986)(internal quotation marks omitted), offering concrete evidence supporting each essential element of its claim, *see Celotex*, 477 U.S. at 322-23. The nonmoving party must show more than "[t]he mere existence of a scintilla of evidence" for elements on which it bears the burden of production, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), and may not "rely merely upon bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Where the nonmoving party has the burden of persuasion, summary judgment will be entered if the nonmoving party fails to establish a genuine issue of material fact as to the existence of an element necessary to its case. *Celotex*, 477 U.S. at 322.

Where a defendant seeks summary judgment, the plaintiff cannot avert summary judgment with mere speculation, or by simply resting on the allegations in her pleadings, but rather she must present competent evidence from which a jury could reasonably find in her favor. *Ridgewood Board of Education v. N.E. for M.E.,* 172 F.3d 238, 252 (3d Cir 1999); *Woods v. Bentsen*, 889 F.Supp. 179, 184 (E.D.Pa. 1995)(Reed, J.). "Ultimately, [w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* (quoting *Matsushita* at 587). (internal quotations omitted and alteration in original).

**B.   PLAINTIFF'S CLAIMS ARE WITHOUT SUPPORT IN THE RECORD AND SHOULD BE DISMISSED.**

**1.   There is No Support for Plaintiff's ADA Claims.**

**a.  The ADA claim is without merit.**

The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). Plaintiff has alleged in her complaint that the limitation in her life activities extends to lifting, walking, and performing manual tasks. *See* Complaint ¶ 16. In order to establish a prima facie case of discrimination under the ADA, Plaintiff must demonstrate: "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision *as a result of discrimination*." *Gaul v. Lucent Technologies, Inc.,* 134 F.3d 576, 580 (3d Cir. 1998) (emphasis supplied).

For purposes of this motion for summary judgment only, KenCrest is not challenging whether Plaintiff had real or perceived disability. However, it is crystal clear from the foregoing Statement of Undisputed Material Facts that KenCrest did not subject Plaintiff to an adverse

employment decision "as a result of discrimination." **To the contrary, she was demoted because of her unsatisfactory job performance,** such as

- use of unprofessional and inappropriate language with staff (Exhibits 2, 7, 10),

- lack of proper documentation (Exhibit 24, 9),

- problems with filing (Exhibit 8),

- issues with resident care (Exhibit 9),

- not responding to supervisors' emails in a timely manner (Exhibit 10),

- missing residents' medical appointments (id.),

- failing to obtain requested items for residents (id.),

- not ensuring staff attended mandatory training (id.),

- not properly training staff to enable them to make repairs at the home (id.),

- making inappropriate comments about staff to other staff members (Exhibit 17),

- not performing job duties (id.).

The foregoing is only a partial list of the issues that KenCrest encountered when dealing with Anderson's job performance.

Claims under the ADA follow the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). The plaintiff-employee bears the initial burden of proving a prima facie case of discrimination. *See id.* The burden then shifts to the employer to present a non-discriminatory reason for the adverse decision. *Id.* Once the employer presents a non-discriminatory reason for the adverse employment decision, the employee must "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." *Kautz v. Met-Pro Corp.,* 412 F.3d 463, 467 (3d Cir. 2005). In order to avoid summary judgment, Courts require a plaintiff to put forward "such weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder <u>could</u> rationally find them unworthy of credence." *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994). *Fuentes* further explains that "to avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that <u>each</u> of the employer's proffered non-discriminatory reasons . . . was either a <u>post hoc</u> fabrication or otherwise did not actually motivate the employment action." *Fuentes* at 764 (emphasis in the original); *see also Logue v. Int'l Rehab. Assocs.,* 837 F.2d 150, 155 (3d Cir. 1988) (holding that "the district court erred in failing to consider all of [the employer's] proffered evidence of legitimate business reasons for [the plaintiff's] termination"). At this step, an employer may not use evaluating criteria which lacks any relationship at all to the performance of the employee being evaluated because to do so would be inconsistent with and contradictory to the employer's stated purpose. *See Fuentes,* 32 F.3d at 765. Absent this type of violation of the *Fuentes* standard, we will not second guess the method an employer uses to evaluate its employees. *See Simpson v. Kay Jewelers, Div. of Sterling, Inc.,* 142 F.3d 639, 647 (3d Cir. 1998).

To survive summary judgment at the third stage of the *McDonnell Douglas* analysis, Anderson must proffer sufficient evidence to allow a jury to conclude that the employer's non-discriminatory reason was a pretext. *See id.* "[T]he plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.,* 142 F.3d 639, 644 (3d Cir. 1998). As the Third Circuit observed in *Fuentes, supra:*

> [T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken . . . Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence" and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons."

32 F.3d at 765 (internal citations omitted).

Plaintiff has admitted that she was never denied medical leave during her employment with KenCrest. (See Exhibit 3, 231:4-8). She was also always returned to her prior position when she came back from leave. (See Exhibit 3, 25:11-15 and 48:18-25).   Plaintiff admits that her supervisor had the authority to direct her how to run the group home. (See Exhibit 3, 121:5-8 and 123:2-9). Plaintiff even admits that some of the things that she was criticized for fell within the realm of her responsibilities as a supervisor. They included keeping residents medical appointments and having repairs made at the group home.    (See Exhibit 3, 132:3-24 and 136:2-24).   Plaintiff cannot now dispute other performance issues that her supervisor pointed out to her because she says that she has no recollection of them including: whether she obtained a free phone for a resident, whether her staff were overdue for mandatory training and whether or not her staff were properly trained to complete the proper requests for maintenance. (See Exhibit 3, 134:2-16,  135:2-14 and 145:16-25 through 147:2-24). Throughout her tenure as a community home supervisor, before and after she took her worker's compensation and FMLA leave,  there were duties Plaintiff consistently was criticized for including: speaking inappropriately to staff, failing to keep documentation organized and filed and failing to keep on top of resident's medical appointments. The uncontradicted evidence unequivocally establishes that KenCrest did everything it could reasonably have been expected to do to support Plaintiff and to maximize the chances that she could continue her employment there.

Plaintiff has no proof, and certainly not a preponderance of evidence, to establish that the obviously legitimate reasons for her discipline were a pretext. The burden of proving pretext remains at all times with Plaintiff. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).   To meet her burden, Plaintiff must "point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Abramson v. William Paterson College*, 260 F.3d 265, 283 (3d Cir. 2001) (*citing Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). *See also Simpson v. Kay Jewelers*, 142 F.3d 639, 644 (3d Cir. 1998); *Sempier v. Johnson & Higgins*, 45 F.3d 724, 731 (3d Cir. 1995).  An employer, however, would still be entitled to judgment as a matter of law "if the Plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant . . . evidence that no discrimination has occurred." *Reeves, supra*; *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 673 (3d Cir. 2002).

As noted above, Anderson did not perform her job functions in a satisfactory manner, and KenCrest met these episodes with continuous training and mentoring and firm, fair, and consistent discipline. There are thus no "weaknesses or inconsistencies" here. Simply put, Plaintiff's ADA claim fails because, even assuming that she had made out her prima *facie case*, KenCest has met its burden to articulate non-discriminatory reasons for her termination and Plaintiff has mustered no evidence to demonstrate pretext.  Her unsupported allegation that Defendant's employment decisions were motivated by discrimination, however, "does not make it so." *See Billet v. CIGNA Corp.*, 940 F.2d 812, 816 (3d Cir. 1991), *overruled in part on other grounds by St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).

Notably, Plaintiff alleges that it was Ms. VanKirk who led the discrimination against her and not any of her other supervisors for her health problems[7]. (See Exhibit 3, 34:3-10). But Plaintiff cannot explain away the numerous facts that contradict that assertion. First, Plaintiff was given similar evaluations from her first two supervisors. (See Exhibit 3, 116:6-21). In fact, Ms. VanKirk's February 2011 evaluation evaluated Plaintiff more favorably in some areas than the earlier evaluation. *Id.* Second, Ms. VanKirk allowed Plaintiff's probationary status to end, even after Plaintiff had taken her first worker's compensation leave. (See Exhibit 3:26-7-23). Third, Plaintiff admits that her supervisor was correct in disciplining her for failing to perform her job duties and the failures Ms. VanKirk was pointing out were job duties assigned to Plaintiff. (See Exhibit 3, 123-9-14 and 131, 3-19). Fourth, it is undisputed that Plaintiff's staff made ongoing complaints about her. (See Exhibit 2, 7, 10, 17, 24 and  Exhibit 3, 139-19-25 through 140:2 and 184:6-14). Lastly, Plaintiff has admitted that she had no information as to whether or not Ms. VanKirk supervised all of her community home supervisors in the same manner she supervised Plaintiff. (See Exhibit 3, 191:9-13). The record in discovery, even when viewed in the light most favorable to her, demonstrates that these reasons were far from pretextual. KenCrest urges the Court to enter summary judgment on Plaintiff's ADA claim.

### b.  Plaintiff's ADA Retaliation Claim Should Also be Dismissed.

In order to establish retaliation, Plaintiff must prove that: (1) she engaged in some protected activity, (2) KenCrest subjected her to some adverse employment action, and (3) there is a causal connection between the protected activity and the adverse employment action.  *See, e.g., Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074 (3d Cir. 1996).  An employer would be entitled to judgment as a matter of law where the evidence is insufficient to raise an inference

---

[7] Even though  discipline was given to her by a subsequent supervisor and not Ms. VanKirk, Plaintiff felt that this discipline was also discriminatory in nature. (See Exhibit 3, 213-217). Plaintiff, however, has admitted she has no evidence to support this.  *Id.*

that the protected activity was the likely reason for the adverse action." *Wade v. Knoxville Util. Bd,* 259 F.3d 452, 463 (6th Cir 2001)*; Walborn v. Erie County Care Facility,* 150 F.3d, 584, 589 (6th Cir. 1998).

With respect to the existence of a causal link between plaintiff's protected activity and defendant's adverse actions, two factors are relevant: (1) timing and/or (2) evidence of ongoing antagonism. *Abramson v. William Paterson College,* 260 F.3d at 265, 288 (3d Cir. N.J. 2001). In the first factor, there must be a close temporal proximity between the protected activity and the adverse employment action. *Id.* While the Third Circuit has not specified a strict formula for what is considered to be too long of a gap between   protected activity and adverse action, courts have held that a time span of several months is too great. *See Williams v. Phila. Hous. Auth.,* 380 F.3d 751, 760 (3d Cir. 2004).

As explained above, the facts do not support a causal connection between Plaintiff's request for medical leave and her demotion. She received discipline and nearly equivalent evaluations before and after her medical leaves from two different supervisors, but according to Plaintiff, only one of them was discriminating against her. Notably, her demotion came over a year after her first medical leave and seven months after her second medical leave. (See Exhibit 3, 48:18-25, Exhibit 4 and Exhibit 21). ) She returned from her FMLA leave in late September 2011. (See Exhibit 3, 48:18-25). She was demoted to resident advisor in May 2012. (See Exhibit 21). Plaintiff made no complaints regarding Ms. VanKirk from September 2011 until April 2012. (See Exhibit 3, 49:5-15). While she received ongoing training and mentoring and criticism, Plaintiff admitted that it was appropriate for her supervisor to provide such feedback. (See Exhibit 3, 166:3-15). It is clear that   many of the job performance issues Plaintiff exhibited before Ms. VanKirk was her supervisor continued throughout her tenure as community home

supervisor. Notably issues like speaking inappropriately to staff, failing to keep documentation organized and filed and failing to keep on top of resident's medical appointments occurred both before and after her first medical leave. The above facts establish that there is no causal connection between the protected activity and the adverse employment action and as such, her ADA retaliation claim must be dismissed.

### 3. Plaintiff's PHRA Claim Also Should be Dismissed.

"[T]he PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Fogleman v. Mercy Hosp., Inc.,* 283 F.3d 561, 567 (3d Cir. 2002). Plaintiff has agreed with this statement of law in her Complaint, wherein she alleges identical facts for both claims and asserts that the PHRA and ADA are "analyzed identically and have the same protections." *See* Complaint ¶ 44. Accordingly, KenCrest respectfully requests that the Court to enter summary judgment as to the PHRA claim for the same reasons that it enters summary judgment in KenCrest's favor in connection with the ADA claim.

### 4. Plaintiff's FMLA Claim is Unsupported.

#### a. The Retaliation Claim is Without Merit.

Under the FMLA, employees are entitled to a maximum of twelve weeks of leave per year to address "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employer may not retaliate against an employee who requests or uses FMLA leave. *Id.* at § 2615(a)(2); 29 C.F.R. § 825.220(c).

In the Third Circuit, analysis of an FMLA retaliation claim follows the burden-shifting framework set forth in *McDonnell Douglas,* 411 U.S. 792. To prove retaliation in violation of the

FMLA, Anderson bears the burden to make out a *prima facie* case showing "that (1) [s]he took an FMLA leave, (2) [s]he suffered an adverse employment decision, and (3) the adverse decision was causally related to [her] leave." *Conoshenti v. Public Svc. Elec. & Gas Co.,* 364 F.3d 135, 146 (3d Cir. 2004). If Plaintiff were to succeed in making out her *prima facie* case, then the burden would shift to her employer "to articulate some legitimate, nondiscriminatory reason" for her termination. *Marzano v. Computer Science Corp. Inc.,* 91 F.3d 497, 503 (3d Cir. 1996) (citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252-53, (1981)). Once the employer carries its burden, as KenCrest has done here with its detailed statement of undisputed material facts, the burden shifts back to Anderson to "prove by a preponderance of the evidence that the legitimate reasons offered by [KenCrest] were not its true reasons, but were a pretext for discrimination." *Id.*

The Third Circuit Court of Appeals has explained that the pretext showing "places a difficult burden on the plaintiff." *Kautz v. Met-Pro Corp.,* 412 F.3d 463, 467 (3d Cir. 2005) (citing *Fuentes, supra,* 32 F.3d at 765). To succeed in showing pretext, it is not enough for Plaintiff to show that KenCrest's decisions concerning her employment were "wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id.* Accordingly, Plaintiff must show that KenCrest's reasons for acting as it did were fraught with "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions … that a reasonable fact finder could rationally find them unworthy of credence." *Id.*

Plaintiff has no proof, and certainly not a preponderance of evidence, to establish that the obviously legitimate reasons for her discipline were a pretext. In fact, the discovery record is replete with instances in which Anderson did not perform her job functions in a satisfactory

manner, and that these episodes were met with firm, fair, and consistent discipline. There are thus no "weaknesses or inconsistencies" here. Simply put, Plaintiff's FMLA retaliation claim fails because, even assuming that she had made out her prima *facie case*, KenCest has met its burden to articulate non-discriminatory reasons for her termination and Plaintiff has mustered no evidence of pretext. As explained above, Plaintiff returned from her FMLA leave in late September 2011. (See Exhibit 3, 48:18-25). The record shows that she was receiving training, discipline and constructive criticism even before she took her FMLA leave. (See Exhibits 2, 6, 7, 8, 9, 10 and 24). That training, discipline and constructive criticism continued after she returned from FMLA leave because her poor job performance necessitated it. There is no connection between her FMLA leave and her training, discipline and constructive criticism she received. The record in discovery, even when viewed in the light most favorable to her, demonstrates that these reasons were far from pretextual. KenCrest urges the Court to enter summary judgment on this FMLA retaliation claim

**b.      The Interference Claim is Likewise Meritless.**

The U.S. Department of Labor ("DOL")'s regulations provide that "any violations of the [FMLA] or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act." 29 C.F.R. § 825.220(b). The DOL's regulations also impose upon the employer obligations to communicate with employees regarding their rights under the FMLA. In particular, the regulations require employers to provide employees with individualized notice of their FMLA rights and obligations. Pursuant to 29 C.F.R. § 825.208(a), "in all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee." DOL regulations define "interfering with" the exercise of an employee's rights as including, "for example, not only

refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA." 29 C.F.R. § 825.220(b).

As cogently explained above relating to Plaintiff's other claims, the Complaint is devoid of any allegation, and the record is devoid of any evidence, as to how KenCrest allegedly interfered with Plaintiff's exercise of her rights under the FMLA. Plaintiff certainly has adduced no evidence in discovery to support it. In fact, Plaintiff has admitted that she was never denied medical leave during her employment with KenCrest. (See Exhibit 3, 231:4-8). She was even returned to her position of community home supervisor when she returned. (See Exhibit 3, 48:18-25). Furthermore, the record establishes that Anderson took FMLA leave **after** she was disciplined for her unsatisfactory job performance, not before. (See Exhibits 11 and 12). Accordingly, the Court should grant summary judgment in KenCrest's favor on the interference claim.

### 5.    <u>Plaintiff Cannot Support a Claim for Wrongful Discharge.</u>

First and formemost, Plaintiff was never terminated from her employment by KenCrest (See Exhibit 3, 86:4-13).).   Employment is presumed to be at-will in Pennsylvania, and employees may be fired for any or no reason in the absence of a statute or contract to the contrary. *See Geary v. U.S. Steel Corp.,* 319 A.2d 174, 176 (Pa. 1974). Pennsylvania courts have found a common law cause of action for wrongful discharge "in only the most limited of circumstances." *Clay v. Advanced Computer Applications,* 559 A.2d 917, 918 (Pa. 1989). "Where the termination has not implicated a clear mandate of public policy, [the Pennsylvania Supreme] Court and the Superior Court have not permitted a common law cause of action for wrongful discharge." *Weaver v. Harpster,* 975 A.2d 555, 564 (Pa. 2009).

In order to succeed on her claim for wrongful discharge, Anderson must establish: (1) that she engaged in protected activity; (2) that she was terminated either after or contemporaneous with the protected activity; and (3) that there is a causal connection between his protected activity and the employer's adverse action. *See Shellenberger v. Summit Bancorp, Inc.,* 318 F.3d 183, 187 (3d Cir. 2003). Inasmuch as Plaintiff voluntarily resigned her position on March 11, 2013, it is beyond question that she cannot make out the requisite elements of a *prima facie* case for wrongful discharge. (See Exhibit 28). KenCrest did not "discharge" her from employment. She voluntarily chose to separate herself from employment over ten months after she was demoted and when Ms. VanKirk was no longer her supervisor. She also cannot establish a causal connection because, by her own admission, she was never denied medical leave, whether on worker's compensation or otherwise.[8] Taking all of this into account, it is without question that the wrongful discharge claim fails as well.  Nevertheless, even if Plaintiff could make out the second prong of the prima facie case, as explained fully above, any and all actions taken by KenCrest were fair and supported by clear evidence of Plaintiff's poor performance. Accordingly, there exist no casual connection between those actions and any protected activity engaged in by Plaintiff.

## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant KenCrest Services respectfully requests that the Court grant its motion for summary judgment as set forth in the accompanying proposed Order.

---

[8] If the Anderson were able to show these elements, the burden would then shift to KenCrest to articulate a legitimate, non-discriminatory reason for its action. *See id.* However, as set forth in the foregoing portions of this memorandum, there is no question that KenCrest had many legitimate, non-discriminatory reasons for its actions vis-à-vis Plaintiff's work performance.

{00206913.DOC}

Respectfully Submitted,

**SALMON, RICCHEZZA, SINGER & TURCHI** LLP

By: ___/s/ Michele L. Weckerly_____
          Joseph L. Turchi
          Michele L. Weckerly
          *Attorneys for Defendant,*
          *KenCrest Services*

Dated: 12/27/13