# Exhibit 1

Case 2:13-cv-03716-NIQA Document 19-4 Filed 12/27/13 Page 1 of 11

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEKESHIA ANDERSON<br>4322 N. Carlisle Street<br>Philadelphia, PA 19140 : | CIVIL ACTION |
| Plaintiff, : <br> v. : | DOCKET NO.: 11-3617 |
| KENCREST SERVICES<br>502 West Germantown Pike, Suite 200<br>Plymouth Meeting, PA 19462 : | **JURY TRIAL DEMANDED** |
| Defendant. : | |

### FIRST AMENDED CIVIL ACTION COMPLAINT

Dekeshia Anderson (hereinafter referred to as "Plaintiff," unless indicated otherwise), by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.   This action has been initiated by Plaintiff against Kencrest Services (hereinafter referred to as "Defendant" unless indicated otherwise) for violations of the Americans with Disabilities Act, 42 U.S.C. §§12101 *et. seq.* ("ADA"), the Family and Medical Leave Act ("FMLA - 29 U.S.C. §2601 *et. seq.*), the Pennsylvania Human Relations Act, and Pennsylvania Common Law. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### JURISDICTION AND VENUE

2.   This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights under the ADA and the FMLA. This Court may also

assert supplemental jurisdiction over Plaintiff's state law claims as they arise out of the same facts as her federal law claims.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing and dual-filing her Charge with the EEOC and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption

8. Defendant Kencrest Services (hereinafter "Defendant") is a non-profit entity with over 300 locations nationwide, and the entity operates schools, job coaching programs, and many other services.

9. At all times relevant herein, Defendant acted by and through its agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff was hired by Defendant in or about 2007, and she worked for Defendant for most of her employment at 5500 Henry Avenue, Philadelphia, PA 19128 (until 2012, discussed *infra*).

12. Plaintiff was promoted in or about July of 2010 to the position of Community Home Supervisor at the 5500 Henry Avenue location (until 2012, discussed *infra*), based upon her demonstrated performance and good work.

13. In or about December of 2010, Plaintiff sustained work-related injuries wherein a client of Defendant attacked Plaintiff.

14. Prior to December of 2010, Plaintiff had performed her job well, received praise, and did not have disciplinary concerns.

15. Due to the aforesaid work injury in 2010, Plaintiff had and continues to have ongoing problems and has required treatment for back, neck and shoulder problems.

16. Such conditions have and continue to limit Plaintiff's ability at varying times to lift, walk, and to perform manual tasks (among other life activities).

17. Plaintiff had medical limitations following the December 2010 injuries, which had to be accommodated until she was able to resume working for Defendant without restrictions in or about January of 2011.

18. In or about July of 2011, Plaintiff required a medical leave of absence due to her declining health and aforesaid medical conditions.

19. From in or about late July through in or about late September 2011, Plaintiff was on a medical leave of absence.

20. Plaintiff was supervised by one Vicky Anderson for the most part prior to her July 2011 medical leave; however, Plaintiff was supervised by one Valerie Vankirk throughout the second half of 2011 and thereafter.

21. Vankirk was employed as Plaintiff's supervisor and held the title of Assistant Project Director.

22. While discussing her health problems and potential leave needs, Plaintiff was experiencing very significant animosity from her management about her health problems, and had received pretextual discipline in mid-2011, the first discipline she was given in roughly 4 years of working for Defendant.

23. Vankirk exhibited a very clear discriminatory animus about Plaintiff's medical conditions and would often make discriminatory comments such as telling Plaintiff she was never really hurt, nothing happened to you, nothing is wrong with you, and other similar statements inferring Plaintiff was exaggerating or lying about her health problems.

24. Plaintiff made a formal written complaint of discrimination to Defendant's human resources department on July 27, 2011 referencing she has been discriminated against due to her worker's compensation matter and health conditions (among other concerns).

25. On or about September 23, 2011, prior to Plaintiff even returning from her medical leave in late September of 2011, she was sent correspondence outlining potential ways in which she will be given constructive feedback and monitored going forward.

26. During the second half of 2011 and early 2012, Vankirk was also continually raising false or feigned concerns about Plaintiff's conduct in the workplace through questions that implied she was looking for any reason to discipline Plaintiff.

27. Following verbal discipline from July of 2011, Plaintiff was next given written discipline in April of 2012.

28. Due to the ongoing mistreatment Plaintiff was experiencing since her work injury and medical leave needs, she memorialized a complaint to Defendant's human resources management on April 29, 2012, stating in pertinent part:

> On July 27, 2011 I file a claim of discrimination and harassment. As of this date I am still being harass and discriminated against which is giving me an uncomfortable feeling at work . . . On April 4, 2012 Valerie Vankirk I informed her that I would like to transfer. On April 11, 2012 at around 9pm she gave me with a written warning for incident that may have happen about a month ago . . . Before I asked for the transfer I had nothing in my file that would stop me from transferring . . . The harassment and discrimination has not been resolved. With all of the harassment that I am still going through I am requesting for an immediate transfer to the position I apply for on February 20, 2012.

29. Due to Plaintiff's complaint of discrimination on April 29, 2012, Plaintiff was instructed to stay out of work by one Denise Lamlin (Director of Defendant's Employee Relations).

30. On or about May 2, 2012, Lamlin confirmed that she was instructing Plaintiff not to return to work while she working on a "response to [her] letter," which was Plaintiff's complaint of discrimination. *See* 5/2/12 e-mail chain, attached hereto as "Exhibit A."

31. Plaintiff was not permitted to return to work once placed on an involuntary leave because of her very complaint of discrimination on April 29, 2012; and instead, she was told via letter by Lamlin that she would have to reapply for employment for another job.

32. Plaintiff was literally being required to apply and interview for available jobs throughout May 2012 as if she was never employed with Defendant.

33. On May 23, 2012, Plaintiff e-mailed Lamlin explaining in pertinent part:

> . . . When we talked and I complained about discrimination originally, I only told you that I felt the work environment was really hostile and uncomfortable. I went back and re-read your May 7 letter to me because of how long this job transfer/application process is taking, and I disagree that I ever told you returning was not an option. I actually told you I was ready to report to work for my next shift when you put me on admin leave based on your concerns.
>
> Based on what you told me, I thought you were going to basically transfer me into another job opportunity because of my concerns of discrimination and mistreatment. Instead, it seems like you just terminated me and are treating me like an outsider making me apply for jobs as if I never worked for the company previously. I am feeling a little misled. Since I am now not being guaranteed any type of transfer and am being treated like a possible new hire, I would like to be put back in my prior job since I never refused to continue in that job.
>
> Even if I have to continue to endure mistreatment, I need an income. I cannot wait any longer to be possibly rehired in another job.
>
> *See* Exhibit B.

34. Following Plaintiff's request to be reinstated to her prior job, she was suddenly told by Lamlin that she was not being placed back in the job for 2 reasons: (1) for supposed performance concerns; and (2) because Plaintiff previously said returning was not an option. *See* June 1, 2012 Correspondence, attached hereto as "Exhibit C."

35. Later in June of 2012, Plaintiff was unequivocally told by Lamlin that she could under no circumstances be given back her prior job and that if she wanted to remain working for Defendant, she had to take a non-supervisory job.

6

36. Plaintiff was demoted to an inferior job (that was non-supervisory), given a reduced hourly rate at $6.00 less per hour than she previously earned, and she was required to drive a much more substantial distance to work.

37. Plaintiff suffered immense emotional distress through the mistreatment and demotion process.

38. Plaintiff was treated in a very hostile manner, placed on an involuntary leave due to her complaints of discrimination, and demoted in retaliation for her complaints of discrimination.

### First Cause of Action
### Violations of the Americans with Disabilities Act ("ADA")
([1] Actual / Perceived Discrimination; [2] Retaliation)

39. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

40. Plaintiff asserts herein that, due to her health problems (known and/or perceived), requested accommodation (time off from work), and complaints of discrimination, she was: (1) subjected to a hostile work environment; (2) placed on an leave impermissibly in May of 2012; (3) terminated from her supervisor job; (4) and demoted.

41. These actions as aforesaid constitute violations of the ADA.

### Second Cause of Action
### Violations of the Pennsylvania Human Relations Act ("PHRA")
([1] Actual / Perceived Discrimination; [2] Retaliation)

42. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

43. Plaintiff properly exhausted her administrative remedies to proceed under the Pennsylvania Human Relations Act ("PHRA") by timely dual-filing her EEOC Charge with the

Pennsylvania Human Relations Commission and by waiting sufficient time to initiate the instant lawsuit.

44. Plaintiff re-asserts and re-alleges each and every allegation as set forth in her First Cause of Action as such acts against her constitute identical violations under the PHRA (as the PHRA and ADA are analyzed identically and have the same protections).

### Third Cause of Action
### Violations of the Family and Medical Leave Act ("FMLA")
### (Interference & Retaliation)

45. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46. Plaintiff required FMLA-qualifying leave for her serious health conditions of back, neck and shoulder problems in late 2011 and through 2012.

47. Plaintiff's leave in late 2011 and 2012 was all FMLA qualifying, as Plaintiff met all eligibility requirements of the FMLA to be entitled to such coverage.

48. Defendant committed interference and retaliation violations of the FMLA by: (1) mistreating Plaintiff to dissuade her use of leave; (2) terminating Plaintiff's supervisory role and demoting to prevent her from exercising her rights under the FMLA; (3) terminating Plaintiff's supervisory role and demoting her because she exercised her rights under the FMLA (by making the requests for such leave and by taking such leave); (4) by considering Plaintiff's FMLA needs/leave when committing adverse acts against her.

### Fourth Cause of Action
### Common-Law Wrongful Discharge
### (Public Policy Violation)

49. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50. Plaintiff was terminated in substantial part for filing a worker's compensation claim, sustaining a work injury, and/or pursuing worker's compensation benefits against Defendant.

51. These actions as aforesaid constitute wrongful termination in Pennsylvania. *See Shick v. Shirey*, 552 Pa. 590, 716 A.2d 1231 (1997).

WHEREFORE, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

B. Plaintiff is to be awarded actual damages, as well as damages for the pain and suffering, and humiliation caused by Defendant's actions (as permitted by applicable law);

C. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F. Plaintiff shall be permitted to have a trial by jury as requested in the caption of this Complaint.

                                      Respectfully submitted,

                                      **KARPF, KARPF & CERUTI, P.C.**

                            By: _____
                                    Ari R. Karpf
                                    3331 Street Road
                                    Two Greenwood Square
                                    Suite 128
                                    Bensalem, PA 19020
Dated: August 13, 2013               (215) 639-0801